| | |
|---|---|
| **KAZEROUNI LAW GROUP, APC** | **BARTHEL & BARTHEL, APC** |
| Abbas Kazerounian, Esq. (249203) | Nicholas Barthel, Esq. (319105) |
| ak@kazlg.com | nick@barthelbarthel.com |
| 245 Fischer Avenue, Suite D1 | 2173 Salk Ave., Ste. 250 |
| Costa Mesa, CA 92626 | Carlsbad, CA 92008 |
| Telephone: (800) 400-6808 | Telephone: (760) 259-0033 |
| Facsimile: (800) 520-5523 | Facsimile: (760) 536-9010 |

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff,*

# UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA RAMIREZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ONSTAR, LLC,<br><br>Defendant. | Case No.: '23CV0225 H    AGS<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1. **ELECTRONIC FUNDS TRANSFER ACT ("EFTA"), 15 U.S.C. §§ 1693, *ET SEQ.*;**<br><br>2. **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br><br>3. **CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. The express purpose of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq*. is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id.* Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id.* at 1693d-l.

2. VICTORIA RAMIREZ ("Plaintiff"), through Plaintiff's attorneys, individually and on behalf of all others similarly situated, brings this action to challenge the unfair and unlawful actions of defendant ONSTAR, LLC ("OnStar" or "Defendant") in making auto payment deductions from Plaintiff's bank account despite the express termination of such services in violation of: (1) the Electronic Funds Transfer Act (15 U.S.C. §§ 1693 *et seq.*); (2) California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, ("UCL"); and (3) California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA").

3. Plaintiff and the Class members have suffered a concrete injury as a result of OnStar's continued unfair and illegal conduct of charging Plaintiff and class members for services that were canceled. This action seeks, in part, to ensure the illegal practices do not recur in the future, and that moving forward OnStar obtains consent for charges, as required by law.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendant took place in

California.

7. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## JURISDICTION AND VENUE

9. Original subject matter jurisdiction is valid in the U.S. District Court pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693, *et seq*. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the California state law claims. Supplemental jurisdiction is properly exercised where the "state and federal claims derive from a common nucleus of operative fact." *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1204 (S.D. Cal. 2009).

10. This Court has personal jurisdiction over OnStar because OnStar conducts sufficient business within the State of California.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) OnStar conducted business within this judicial district at all times relevant.

## PARTIES

12. Plaintiff Victoria Ramirez is a natural person who resides in El Cajon, California.

13. Defendant OnStar is a Delaware limited liability company and maintains its principal place of business at 400 Renaissance Center, Detroit, Michigan 48265.

14. Upon information and belief, at all times relevant herein, OnStar has been, and is, a fully owned subsidiary of General Motors LLC, a Delaware Limited Liability Company with its principal place of business in Detroit, Michigan.

//

//

## FACTUAL ALLEGATIONS

15. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

16. Defendant is in the business of providing emergency assistance and access to OnStar hands-free calling and navigation services.

17. OnStar Service equipment and software comes installed in most General Motors-manufactured vehicles, such as Cadillac, and it also becomes available by installing OnStar's App from the App Store or on Google Play.

18. Consumers who want to use OnStar Services may try OnStar's free trial period that lasts for several months.[1] When the free trial period ends, consumers who want to continue having access to the services must pay a monthly fee and become Subscribers.

19. OnStar subscribers typically pay between $24.99 and $49.99 per month depending on the plan.[2]

20. Before obtaining an OnStar account, each consumer must accept the terms and conditions of the account, which includes a provision stating:

> 28.10 Limitations on Claims. To the extent permitted by law and unless prohibited by law, You agree that You must file any arbitration request, claim, or cause of action arising out of or related to access to and/or use of the Services or otherwise relating to this Agreement within one (1) year after the events giving rise to such request, claim, or cause of action, or You shall be forever barred from filing such request, claim or cause of action.[3]

---

[1] *See, e.g.,* https://www.onstar.com/trial (last visited Jan. 3, 2023) (noting "[w]hen you buy a 2015 model year or newer Chevrolet, Buick, GMC or Cadillac, it comes with an amazing bonus: a complimentary OnStar and Connected Vehicle Plan trial. . .").

[2] *See* https://www.onstar.com/pricing (last visited Jan. 3, 2023) (noting various plans that range in price from $49.99 a month to $24.99 a month).

[3] *See* User Terms (last updated May 1, 2018) available at https://www.onstar.com/legal/user-terms.

21. Upon information and belief, most OnStar customers utilize autopay, which allows OnStar to debit consumers' bank accounts through either charging the consumer's debit card or debiting their bank's checking account on a recurring monthly basis.

22. Unfortunately, OnStar has a history, pattern, and practice of exploiting its customer's utilization of its autopay feature by continuing to debit consumers' bank accounts (without consent) long after the customer canceled their subscription.

23. For example, one consumer was charged over $2,000 over a span of two years after canceling her OnStar service.[4] And another consumer expressed similar concerns about OnStar continuing to charge the consumer via autopay after the subscription was cancelled.[5]

24. Despite consumers' complaints, OnStar continues to debit consumers' bank accounts without the their permission.

25. Upon information and belief, OnStar's unlawful and unfair practices as alleged herein continue to this date, and will continue in the future, unless enjoined.

## PLAINTIFF'S EXPERIENCE

26. Plaintiff had a 2013 ATS Cadillac, ending in VIN Number 2460, that was originally equipped with OnStar's services, Account Number XXXXX-2942 (the "OnStar Services").

27. On April 3, 2019, Plaintiff canceled the OnStar Services and received a Cancelation Notice via email that same day at about 10:16 a.m.

28. The Cancelation Notice confirmed that Plaintiff's OnStar Services "have been

---

[4] *See* https://www.consumeraffairs.com/automotive/onstar.html.

[5] *Id*. ("Original review: Oct. 5, 2022 Bought a new Chevy Trax with trial period of OnStar. I cancelled OnStar because I'm on a fixed income and couldn't afford the monthly $35 but 2 days later they stole the $35 from my bank account! I am waiting for my bank to open and will dispute this unauthorized debit!!!").

cancelled and [her] hardware has been deactivated."

29. After the April 2019 cancelation, Plaintiff did not provide any written or oral permission, authorization, or consent for OnStar (or any of its affiliates) to collect any subscription charges for the OnStar Services for Plaintiff's 2013 ATS Cadillac.

30. Unfortunately, and unbeknownst to Plaintiff, OnStar continued to debit Plaintiff's checking account without her knowledge or consent for many months.

31. In or around July of 2022, for the first time Plaintiff was surprised to find out that OnStar had been deducting $27.99 from Plaintiff's bank account monthly for the OnStar Services that Plaintiff canceled back on April 3, 2019.

32. Indeed, OnStar billed Plaintiff without her consent for approximately forty (40) months after the April 2019 cancelation, totaling about $1,119.60 in unauthorized charges. The most recent charge occurred on July 5, 2022.

33. Upon noticing the charges for the first time in or around July of 2022, Plaintiff immediately called OnStar's customer service around that time period, and instructed Defendant to stop taking money from her bank account for services that Plaintiff canceled in April of 2019. Plaintiff also requested a refund from OnStar for the unauthorized charges.

34. During the call, an OnStar agent opened an internal complaint for any money OnStar took from Plaintiff's account since the April 2019 cancelation.

35. Plaintiff's efforts to remedy the issue with OnStar was futile.

36. Indeed, following Plaintiff's call to OnStar to request a refund for the unauthorized charges, she received an email on July 11, 2022 at about 7:28 a.m. from OnStar stating, in part,

> This letter is to confirm that we have reviewed your request for a refund of chargers for the OnStar service on your 2013 Cadillac ATS AWD . . .while we will not be refunding the full amount you requested; as a one-time gesture of goodwill we have processed a refund. . . in the amount of $83.97.

37. Upon reading this email, Plaintiff was frustrated that OnStar was only offering

her a fraction of the money it unlawfully withdrew from her account.

38. Nonetheless, without her consent, OnStar initiated an electronic credit of $83.97 to Plaintiff's bank account. For an unknown reason, OnStar also sent a paper check for $83.97 which Plaintiff did not agree with. She did not cash that check since OnStar still owed her over $1,000.

39. OnStar continues to refuse to refund Plaintiff for the full amount taken.

40. To resolve Plaintiff's claims, Plaintiff previously filed her claims in arbitration as required in the Terms and Conditions. However, American Arbitration Association ("AAA") rejected Plaintiff's claims because "OnStar, LLC failed to comply with the AAA's policies regarding consumer claims," and thus AAA must "decline to administer this claim and any other claims between Onstar, LLC and its consumers at this time."

41. Indeed, AAA noted in a November 21, 2022, communication to Plaintiff's counsel that ". . . either party may choose to submit its dispute to the appropriate court for resolution. . ."

42. AAA's decision to decline to administer claims against OnStar also applies to the claims of other similarly situated consumers since OnStar failed to comply with AAA's policies regarding consumer claims.

43. As a result, Plaintiff brings this action in federal court to seek redress for her injuries as well as the injuries of similarly situated consumers.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself, and all persons similarly situated pursuant to Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons within the United States whose bank account was debited for one or more transactions by OnStar without the consumer's written preauthorization within one year prior to the filing of this Complaint.

45. The above-described classes of persons shall hereafter be referred to as the "National Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

46. The "National Class Period" means one year prior to the filing of the Complaint in this action.

47. Plaintiff also seeks certification of the following sub-class pursuant to Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure:

> All persons within California within the four years prior to the filing of this Complaint: (1) that entered into a contract with OnStar containing a one-year limitation on claims and/or (2) whose bank account was debited for one or more transactions by OnStar without the consumer's written preauthorization authorization.

48. The above-described class of persons shall hereafter be referred to as the "California Class." Excluded from the California Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

49. The "California Class Period" means four years prior to the filing of the Complaint in this action.

50. There is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representative of the National Class and/or the California Class.

51. *Ascertainability*: Members of each class are readily ascertainable from Defendant's own records and/or Defendant's agents' records.

52. *Numerosity*: Each class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the classes are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are at least thousands of members of each class. The precise number of members in each class is unknown to Plaintiff.

53. *Commonality*: There are questions of law and fact common to Plaintiff, the National Class and the California Class that predominate over any questions affecting only individual members of each class. These common questions of law and fact include, without limitation:

   i) Whether OnStar's uniform acts and practices violated the EFTA;

   ii) Whether OnStar's conduct is an unfair, fraudulent, and/or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

   iii) Whether OnStar had a uniform policy of not obtaining written preauthorization for electronic funds transfers;

   iv) Whether as a result of OnStar's misconduct Class members have suffered damages and the appropriate amount thereof; and

   v) Whether the Plaintiff and Class members are entitled to equitable relief, including but not limited to injunctive relief as sought herein.

//
//

54. ***Typicality***: Plaintiff's claims are typical of the claims of the members of the National Class and California Class in that Plaintiff is a member of each class she seeks to represent. Defendant charged Plaintiff's account for Defendant's services without Plaintiff's consent (and without written preauthorization) and after Plaintiff canceled the services. Upon information and belief, members of the National Class have experienced similar situations based on nearly identical facts. Furthermore, Plaintiff and members of the California class each signed OnStar's form terms and conditions, which contains the unconscionable provision. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the National Class and California Class. Defendant has no defenses unique to the Plaintiff.

55. ***Adequacy of Representation***: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff's interests do not conflict with those of members from either class. Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interest to those in either class and will fairly and adequately protect the interests of the National Class and California Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

56. ***Superiority of Class Action***: A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of each class is not practicable, and questions of law and fact common to each class predominate over any questions affecting only individual members of the National Class and California Class. Plaintiff and members of both classes have suffered or may suffer loss in the future by reason of Defendant's unlawful policies and/or practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to class members and will thereby effectuate California's strong public policy of protecting the California public from

1  violations of its laws.

2  57.    Even if every individual members of the classes could afford individual
3  litigation, the court system could not. It would be unduly burdensome to the courts if
4  individual litigation of the numerous cases were to be required. Individualized
5  litigation also would present the potential for varying, inconsistent, or contradictory
6  judgments, and would magnify the delay and expense to all parties and to the court
7  system resulting from multiple trials of the same factual issues.

8  58.    By contrast, conducting this action as a class action will present fewer
9  management difficulties, conserve the resources of the parties and the court system,
10 and protect the rights of each member of the classes. Further, it will prevent the very
11 real harm that would be suffered by numerous putative class members who will be
12 unable to enforce individual claims of this size on their own, and by Defendant's
13 competitors, who will be placed at a competitive disadvantage because they chose to
14 obey the law. Plaintiff anticipates no difficulty in the management of this case as a class
15 action.

16 59.    Plaintiff reserves the right to expand each class definition to seek recovery on
17 behalf of additional persons as warranted as facts are learned in further investigation
18 and discovery.

**CAUSES OF ACTION CLAIMED BY PLAINTIFF**

**COUNT I**

**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**

**15 U.S.C. §§ 1693, *ET SEQ*.**

**On Behalf of the Nationwide Class**

24 60.    Plaintiff incorporates by reference all the above allegations as if fully set forth
25 herein, and further alleges as follows.

26 61.    The EFTA provides a basic structure for establishing the rights, liabilities, and
27 responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693
28 *et seq*. The "primary objective" of the EFTA "is the provision of individual consumer

rights." *Id.* § 1693(b). Any attempt to waive rights afforded under EFTA is void and unenforceable. *See* 15 U.S.C. § 1693l ("No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.").

62. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1).

63. Similarly, 15 U.S.C. § 1693a(7) defines the term "electronic fund transfer" to mean "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone."

64. A "preauthorized electronic fund transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals. *See* 15 U.S.C. § 1693a(10).

65. Upon information and belief, as its common and uniform practice, Defendant makes unauthorized electronic withdrawals of service fees for its OnStar services from consumer bank accounts, including Plaintiff's account, without providing the advance notice required by the EFTA, 15 U.S.C., §§ 1693, *et seq*.

66. As alleged herein, OnStar also systematically and routinely initiated preauthorized electronic fund transfers, taking money from the bank accounts of Plaintiff and members of the Nationwide Class, without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E.

67. At all times pertinent hereto, Plaintiff and the Class Members were "consumers" as that term is defined by § 1693a(5) of the EFTA.

68. At all times pertinent hereto, Defendant was a "person" subject to liability under § 1693m of the EFTA.

69. Defendant has violated § 1693e(a), in that Defendant failed to obtain written preauthorization from Plaintiff and the National Class, in writing, of the EFT assessed by Defendant after cancellation.

70. As described above, Defendant has a policy, procedure, and/or practice of debiting consumers' bank accounts after cancellation of Defendant's services.

71. However, Defendant did not have authority to charge the accounts of Plaintiffs and National Class members after termination and/or cancellation of their membership.

72. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff has suffered damages, at a minimum, in the amount of the unauthorized debits taken by Defendant from her bank account.

73. Pursuant to 15 U.S.C. § 1693m, Plaintiff and the National Class Members are each entitled to (i) actual damages; (ii) statutory damages in the amount of the lesser of $500,000 or one percent (1%) of the net worth of Defendant; and (iii) reasonable attorneys' fees and costs.

## COUNT II
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
## CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### On Behalf of the California Sub-Class

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. Plaintiff and Defendant are "person[s]" as defined by California Business & Professions Code § 17201. California Bus. & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

76. "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or

practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

77. By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct that constitutes (a) unlawful, (b) unfair, and (c) fraudulent business practices prohibited by Bus. & Prof. Code §§ 17200 *et seq.*

### *Unlawful Prong*

78. California Business & Professions Code §17200 prohibits any "unlawful ... business act or practice." An unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity and also forbidden by law.

79. Any business act or practice that is unlawful, in the sense that it violates a specific statute, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made, may be enjoined under the UCL.

80. As discussed herein, Defendant has violated the CLRA and EFTA by debiting consumers' bank accounts without written preauthorization and included an unconscionable provision in its terms and conditions.

81. Defendant's unlawful business practices directly harmed Plaintiffs since Plaintiffs have suffered monetary damages due to said conduct.

82. Thus, Defendants' conduct has violated the "unlawful" prong of California Business & Professions Code § 17200.

### *Unfair Prong*

83. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."

84. There are three tests to test whether a defendant's actions are unfair.

85. First, whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law.

//

86. Second, whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

87. Third, whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

88. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant continued to debit consumers' bank accounts and other payment methods to collect fees despite the consumer already cancelling their subscription with Defendant.

89. Such theft of consumer funds is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Furthermore, this repetitive monthly charging of consumers without their written preauthorization or consent is not outweighed by any reasonable or justifiable motive.

90. Consequently, Defendant has committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*.

91. Plaintiff and other members of the California or National Class could not have reasonably avoided the injury suffered by each of them.

92. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, as Defendant continues to debit consumers' bank accounts without their authorization or consent, and make automatic renewal offers and continuous service offers in the manner described above and herein, in violation of California Business & Professions Code §§ 17600, *et seq*. and California Business & Professions Code §§ 17200, *et seq*.

### *Fraudulent Prong*

93. The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described claims, omissions, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

94. As a direct and proximate result of Defendant's conduct, wrongful actions, inaction, omissions, and nondisclosures, Plaintiff and the Class have suffered (and will

continue to suffer) damages.

95. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, as Defendant continues to refuse to provide Plaintiff, and those similarly situated, with refunds for unauthorized transactions.

96. Unless enjoined, Plaintiff and the general public will continue to face injury, as Defendant will continue to engage in the above-described wrongful conduct. Plaintiff therefore, on behalf of, and for the express benefit of the general public, seeks a public injunction pursuant to Cal. Bus. & Prof. Code § 17203.

97. Plaintiff also seeks on behalf of herself and the California Sub-Class restitution and an injunctive relief to prohibit Defendant from continuing such unlawful and unfair business practices including requiring Defendant to comply with EFTA and to modify its Terms and Conditions to remove the unconscionable provision contained herein.

## COUNT III
### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *ET SEQ.*
**On Behalf of the California Sub-Class**

98. Plaintiff incorporates all of the above paragraphs of this Complaint as though fully stated in this cause of action.

99. California Civil Code Section 1750 *et seq.*, provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

100. The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides*, inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

101. Plaintiff and Class members are "consumers" within the meaning of California Civil Code §1761(d).

102. Defendant's servicing of OnStar Services constitutes "services" as defined pursuant to Civil Code Section 1761(b).

103. The agreement by Plaintiff and each member of the California Class to have OnStar provide services through OnStar's Terms and Conditions and each subsequent payment—authorized or unauthorized—constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

104. The CLRA prohibits "representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *California Civil Code* §1770(a)(14).

105. Defendant violated Civil Code Section 1770(a)(14) by making unauthorized withdrawals of service fees from bank accounts of Plaintiff and Class members after termination and/or cancellation of their monthly membership.

106. The CLRA also prohibits "inserting an unconscionable provision in the contract." *California Civil Code* §1770(a)(19).

107. Defendant inserted a provision in its Terms and Conditions that states:

> You agree that You must file any arbitration request, claim, or cause of action arising out of or related to access to and/or use of the Services or otherwise relating to this Agreement within one (1) year after the events giving rise to such request, claim, or cause of action, or You shall be forever barred from filing such request, claim or cause of action.

108. Defendant violated Civil Code Section 1770(a)(19) by inserting a provision that severely shortens the time in which Plaintiff may bring a claim under the CLRA or UCL by several years.

109. On information and belief, Defendant's violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely for Defendant's self-interest, monetary gain and increased profit.

110. Plaintiff further alleges that Defendant knows, or should have known, that Defendant's acts would harm consumers and Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge.

111. As a result of Defendant's deceitful conduct regarding its services, Plaintiff and Class members were injured because Defendant made unauthorized withdrawals of service fees from consumers' bank accounts for services Plaintiff and Class members did not receive and were done after cancellation.

112. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

113. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which is available to a prevailing plaintiff in class action cases such as this matter.

114. Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to *California Civil Code* § 1780(d).

115. Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the California Sub-Class, seeks an injunction requiring Defendant to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA.

116. Plaintiff intends to serve on Defendants a demand for corrective action pursuant to Cal. Civ. Code § 1782. As a result, this claim is for equitable relief only at this time. Plaintiff reserves the right to amend the complaint in the future to plead money damages if the Defendant does not appropriately remedy its CLRA violations following a 30-day grace period.

//
//
//
//

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and the Class members damages against Defendant and relief as follows:

- That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Classes;
- Appointing the law firms representing Plaintiff as Class Counsel;
- An award of the lesser of $500,000.00 or one percent (1%) of the net worth of the Defendant;
- An award of treble damages against Defendant pursuant to the EFTA;
- An award of actual and/or statutory damages, in an amount to be determined at trial;
- Injunctive and other equitable relief against Defendant as necessary to protect the interests of Plaintiff and other members of the California Sub-Class, and an order prohibiting Defendant from engaging in unlawful and/or unfair acts described above, including public injunctive relief;
- Statutory pre-judgment and post-judgment interest on any monetary relief awarded;
- An award for costs and reasonable attorney's fees as may be allowable under applicable law including Code of Civil Procedure § 1021.5, and California Civil Code § 1780, the private attorney general doctrine, and/or any other applicable law; and,
- Any and all other relief the Court deems just and proper.

//
//
//
//
//

# DEMAND FOR JURY TRIAL

117. Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: February 6, 2023

Respectfully submitted,
**KAZEROUNI LAW GROUP, APC**

By:  /s/ Abbas Kazerounian
Abbas Kazerounian, Esq.
*ATTORNEYS FOR PLAINTIFF*

**ADDITIONAL PLAINTIFF'S COUNSEL**
**KAZEROUNI LAW GROUP, APC**
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523